**BALTIMORE AND OHIO RAILROAD COMPANY, Plaintiff, v. PRODUCERS LIVESTOCK COOPERATIVE ASSOCIATION, Defendant.**

Common Pleas Court, Fayette County.

No. 21813.  Decided January 11, 1956.

John S. Phillips, Chillicothe, Lovell & Woodmansee, Washington C. H., Robert O. Smith, Jr., Cincinnati, for plaintiff.

Richard P. Rankin, Washington C. H., for defendant.

## OPINION

By CASE, J.

Inasmuch as this cause has been submitted to the court upon the pleadings and an agreed statement of facts, the court deems it to be in the interest of brevity and clarity to set forth herein plaintiff's petition and exhibit attached thereto, the defendant's answer, and said agreed statement, as follows:

"Plaintiff, The Baltimore and Ohio Railroad Company, is a corporation incorporated and organized under the laws of the State of Maryland in the United States of America, with its principal place of business at Baltimore, Maryland, and is a common carrier.

"Plaintiff says that there is due it from the defendant on an account, copy of which is attached, made a party hereof and marked Exhibit A, the sum of One Hundred twenty-one and 10/100 ($121.10) Dollars, with interest at 6% per annum from the 15th. day of June, 1952.

"Plaintiff further says that the defendant does business under the style and name of Producers Livestock Marketing.

"Wherefore, Plaintiff prays for judgment against the defendant in the amount of One Hundred Twenty-one and 10/100 ($121.10) Dollars, with interest at 6% per annum from June 15, 1952, and for its costs herein expended."

"EXHIBIT A

Producers Livestock Marketing

Address Washington
Court House, Ohio

To   The Baltimore and Ohio
     Railroad Company, Dr.

Make remittance to Treasurer,
Baltimore and Ohio Railroad
Company, Baltimore 1, Md.

Auditor Freight
Traffic Claims Bureau

Dept. No. OC-94295-7

Months Acct July 1953
Date Made. June 25, 1953

For balance of freight charges and tax due on B & O cars 112558 and 112387, containing 38 head ordinary stock cattle shipped by Producers Livestock Marketing, from McCook, Nebr., June 12, 1952, to themselves at Washington Court House, Ohio, covered by McCook, Nebr., to Washington Court House, Ohio, waybills 451261 and 451262, June 12, 1952, viz:
1 SD car ordered:

| | | | |
|---|---|---|---|
| To E. St Louis, | weight 24400 | lbs. at | |
| | | 57c cwt. | $139.08 |
| | | IC 15% | 20.86 |
| 2 SD cars furnished: | | | |
| B & O 112558-Beyond, | weight 22000 | lbs at | |
| | | 56c cwt. | 123.20 |
| | | IC 15% | 18.48 |
| " " | 22000 | lbs at | |
| | | 56c cwt. | 123.20 |
| | | IC 15% | 18.48 |
| | | Bedding | 2.06 |
| | Tax on $445.36 | @ 3% | 13.36 |
| | | | |
| | | Total | $458.72 |
| | | Paid | 337.62 |
| | | | |
| | | Balance due | 121.10 |

Authority:
To E. St. Louis-57c CB&Q 1752-P, ICC 20205
Supplement 6, Table 2, Item 100
Beyond                       56c CFA, ICC 4430
Plus 15% increase
Please show G. A. Bill No. 7000
and our claim number when vouchering
in our favor.

Certified T. C. Potter<br>
Approved W. A. McClean LW"

"ANSWER

"Now comes the defendant and for answer does deny each and every allegation in the petition contained."

"AGREED STATEMENT OF FACTS

"The parties to this action by their counsel duly authorized, hereby stipulate and agree that the following are all the material facts involved in this controversy and that the same shall be submitted to the Court for decision without other evidence to be offered by either party:

"1. On June 12, 1952, The Producers Livestock Marketing Company, hereinafter called 'Shipper,' shipped 38 head of stocker or feeder cattle from McCook, Nebraska, consigned to Producers Livestock Cooperative Association, Washington Court House, Ohio, hereinafter called 'Producers.'

"2. Shipper ordered one 40 foot single deck car from the agent of the C. B. & Q. R. R. Co., the originating carrier.

"3. Said originating carrier was unable to furnish the car ordered and instead, furnished for its own convenience, two 36 foot single deck cars.

"4. The shipper's order for one 40 foot car and the carrier's substitution for two 36 foot cars are clearly set out in the body of the Uniform Live Stock Contract which was executed by the originating carrier and Producers covering the shipment of said 38 head of cattle as follows:

" '1-40 Ft SD Ordered and Furnished 2 SD 36 in Lieu.'

"5. Said 38 head of cattle were loaded by said originating carrier as follows:

"19 head in CB&Q 59007—Waybill No. 451261

"19 head in CB&Q 59007—Waybill No. 451261

"6. The cattle weighed 23,090 pounds or an average of 607 pounds.

"7. Said CB&Q cars were routed by shipper as follows:

" 'CB&Q Omaha MP St. L. B&O Destn.'

"8. Said CB&Q cars were billed from McCook, Nebraska, as one car with a combined weight of 24000 lbs.

"9. Tariff CB&Q ICC 20205, under the so-called 'two-for-one' rule, permits the substitution of two 36 foot cars for one 40 foot car as ordered, and the assessment of charges from McCook, Nebraska, to St. Louis on the basis of one 40 foot car, weight 24000 lbs.

"10. From McCook, Nebraska, to East St. Louis, Illinois, under said CB&Q Tariff the rate was 57 cts. cwt., plus 15% increase, which produced aggregate charges of $159.94 as shown on Baltimore and Ohio Railroad Company Form 652-A, marked 'Exhibit A,' and attached hereto and made a part hereof.

"11. The Baltimore and Ohio Railroad Tariffs have no such 'two-for-one' rule in effect east of the Mississippi River on the movement from East St. Louis, Illinois, to Washington Court House, Ohio.

"12. When said CB&Q cars arrived at East St. Louis for interchange with the B&O to destination said 38 head of cattle were re-loaded 19 head each in B&O cars 112558 and 112387.

"13. 'Exhibit A' sets out in detail the various items which make up the railroad's total bill of $458.72, which includes freight charges, bedding and tax.

"14. When said B&O cars were delivered at destination and a freight bill was presented, Producers refused to pay the freight charges as computed on two cars from East St. Louis and tendered $337.62, which the destination carrier accepted and credited on said total bill, leaving a claimed balance of $121.10, which The Baltimore and Ohio Railroad Company now seeks to collect."

From all of the agreed facts of record herein, it clearly appears and is undisputed that the "Shipper" herein executed a contract with the originating carrier; and that said contract is generally known and described as the "UNIFORM LIVE STOCK CONTRACT" (adopted by Carriers in Official, Southern, Western and Illinois Classification territories, March 15, 1922, as amended August 1, 1930, and June 15, 1941) which was and is required to be used for shipments of Live Stock and Wild Animals instead of Uniform Bill of Lading.

Plaintiff admits that said contract expressly provided for through shipment from McCook, Nebraska, to Washington Court House, Ohio, in one 40 foot single deck car; and that it was expressly set out and noted in the body of said contract by said originating carrier as follows:

"1-40 Ft SD Ordered and Furnished 2 SD 36 in Lieu."

It is also admitted by plaintiff that the two 36 foot cars of the originating carrier were furnished for the convenience of said carrier and were billed from McCook, Nebraska, as one car with a combined weight of 24000 pounds.

It is not disputed that said 38 head of cattle could have been safely loaded and carried in one 40 foot single deck car called for by the contract; and it is reasonable to assume that plaintiff knew, or should have known, at the point of interchange, the terms and conditions of said contract between the shipper and originating carrier; and that the charges thereunder were to be based upon those applicable to one 40 foot car.

The sole question in controversy is whether the plaintiff should have loaded the shipment into one 40 foot car and assessed charges accordingly, rather than on the two-car basis as made.

In 9 American Jurisprudence 985, Sec. 899, it is stated:

"It is established that a through bill of lading issued by the initial carrier upon the acceptance of property for interstate or international transportation, under the provisions of the Interstate Commerce Act, governs the entire transaction and fixes the obligations of all participating carriers to the extent that its terms are applicable and valid; and a connecting carrier may not vary the terms of the original bill. Independently of statute, whether a connecting carrier is bound by the provisions of the original contract depends upon the circumstances of the particular case and the relationship of the carriers to each other."

From the record in the instant case, there appears to be no facts or circumstances which would give rise to any exception under the general rule of law so established and recognized.

It is equally well established and recognized that the law imposes upon carriers the obligation of arranging to every reasonable extent for through carriage and through shipment. For obvious reasons, neither the burden of following his shipment to a connecting point between two carriers and there transferring it, nor of bearing the expense of such transfer, can or should be imposed upon the shipper under the agreed facts and circumstances of record herein. Nor under such circumstances could it be deemed fair and reasonable that the defendant should be required to pay higher charges than it would have paid had the connecting carrier furnished the equipment that was ordered by the shipper and that is provided for in the plaintiff's tariff.

In the light of the law and facts hereinabove set forth and discussed, this court is compelled to conclude that 38 head of cattle, with an actual weight of 23,090 pounds, and the express notation on the original billing that said shipment was being moved as one car, even though actual movement into East St. Louis was in two cars, constituted sufficient facts and circumstances to put the Baltimore and Ohio Railroad Company on notice that, in the transfer of said shipment, it should have reloaded said cattle into one 40 foot car; and that to find otherwise, under the facts and circumstances of record herein, would have the force and effect of holding that defendant shipper was required to follow said shipment in order to insure that plaintiff carrier would transfer same in accordance with the terms and conditions set forth in said contract of carriage.

For all of the reasons hereinabove stated, this court must conclude that the collection of the charges herein sought by the ·plaintiff would be unjust and unreasonable to the extent that they exceed those charges which would have accrued on the basis applicable to a car of the size ordered by the shipper and as expressly called for in the contract of carriage; and this court is therefore compelled to conclude that plaintiff's petition should be dismissed at plaintiff's costs.

Counsel for defendant should prepare an entry accordingly with appropriate exceptions therein noted, and submit. same to counsel for plaintiff and to this Court for approval by, on, or before January 23, 1956.